# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MICHAEL LAWRENCE BURGESS,**

    **Petitioner,**

v.

**UNITED STATES OF AMERICA,**

    **Respondent.**

**CASE NO. 2:07-CV-01283**
**CRIM. NO. 2:04-CR-00147**
**JUDGE FROST**
**MAGISTRATE JUDGE KING**

## OPINION AND ORDER

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the petition, respondent's return of writ, petitioner's reply and the exhibits of the parties. For the reasons that follow, this action is hereby **DISMISSED**. Petitioner's request for an evidentiary hearing is **DENIED**. Petitioner's motion for notification of case status, Doc. No. 76, is **DENIED** as moot.

## FACTS and PROCEDURAL HISTORY

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> The record in this case establishes that the defendant was found to be in possession of crack cocaine on three different occasions over a nine-month period between December 2003 and August 2004. Burgess insists that the circumstances indicate his guilt of mere possession of the drug for his own personal use. The government takes the position that the following facts establish possession with intent to distribute.

December 18, 2003, Arrest

On the first occasion, Columbus police received a report of a man threatening a woman with a gun in the vicinity of 2381 Apple Street. Arriving at that location, Officers Michael Kegley and Bradley Wannamacher noticed an individual sitting in a truck parked on the grass with both its motor and its lights turned off. As they directed that person out of the driver's side of the vehicle, the officers noticed a second person, later identified as defendant Burgess, crouched as though hiding in the front passenger seat. After also removing Burgess from the truck, the police recovered two loaded firearms from the floor on the passenger side of the vehicle. A subsequent pat-down of the defendant yielded an electronic scale, a bag of marijuana, and a total of 12 grams of crack cocaine, an amount that later trial testimony indicated would sell for $400 to $1200, depending on how the material was divided and packaged. However, the officers found no paraphernalia in the truck that could be used to smoke the crack cocaine, no cigars (in which the crack cocaine could be combined with marijuana or other substances for smoking purposes), no evidence of cigar smoke, and no odor of crack cocaine that had recently been smoked.

According to the police, mere users of crack cocaine are not usually found with 12 grams of the illegal substance in their possession; rather, only dealers of narcotics generally carry such large amounts with them. Officer Kegley further testified at trial that he could not recall ever arresting a simple user of narcotics who invested in, used, and carried a digital scale and who did not carry with him or her paraphernalia for smoking crack, especially if the individual was then in possession of the illegal substance.

May 15, 2004, Arrest

Additional trial testimony recounted how two other Columbus police officers spotted the defendant sitting in the passenger seat of a vehicle driven by Burgess's girlfriend, Edith Dixon, on May 15, 2004. Because the officers recognized Burgess and were aware that an outstanding warrant existed for his arrest for failing to appear for a court date related to the December

2003 arrest, Officers Richard Griggs and Brett Slaughter then effected a stop of the automobile. A search of the vehicle yielded two loaded firearms (one found under the driver's seat and the other under the passenger's seat), an electronic digital scale, two film canisters containing crack residue, and scattered crumbs of crack cocaine. Searches of the two occupants of the vehicle resulted in discovery of a baggie of marijuana, a baggie of crack, and approximately $80 on the defendant, and crack cocaine and approximately $200 on Dixon. Although a total of 3.3 grams of crack was recovered by the police, officers did not observe Burgess or Dixon using crack, did not detect an odor of smoked crack cocaine, and found no smoking paraphernalia or cigars in the vehicle. After being handcuffed, transported to police headquarters, and advised of his right not to talk to the police, the defendant nevertheless "claimed that all of the narcotics, contraband, and the guns that were found in the vehicle were his."

August 14, 2004, Arrest

Three months later, Officer Griggs was engaged in surveillance of a suspected crack house in Columbus when he observed the defendant arrive on the scene and hand another individual something from a container Burgess produced from his pants pocket. The police were unable to detain the individual seen with Burgess, but after following the defendant to a nearby store, Griggs arrested Burgess and recovered from him $900 in cash and a film canister that contained four grams of crack cocaine. Again, however, police found no paraphernalia on the defendant's person that would have been of use in actually ingesting the illegal narcotic.

Based upon these facts and observations, as well as upon information that the ammunition found in the firearms Burgess claimed were his was manufactured outside the state of Ohio, and information that the defendant had previously been convicted of a felony, the government obtained a seven-count indictment against Burgess. At trial, the defendant testified in his own defense, admitting that he used crack cocaine but denying that he ever possessed it with the intent to sell it to others. He further disputed the inference that the quantities of

3

> the drug recovered from him provided evidence of his status as a seller of narcotics. Instead, he testified that crack addicts would purchase whatever amount of the drug they could afford: "If you've got $50, you're going to buy $50. If you've got $100, you're going to buy $100."
>
> On direct examination, the defendant confessed to possession of the 12 grams of crack recovered on December 18 and to the 3.3 grams of crack found in Edith Dixon's car on May 15. However, he denied possessing the narcotics that served as the basis for the August 14 arrest. Burgess claimed that he had admitted ownership of the guns in Dixon's vehicle only to protect her from a prosecution that could have sent her to prison for life. Additionally, he admitted his ownership of the electronic scales confiscated from him, but he claimed that he purchased those scales only to ensure that he was not cheated during his own purchases of drugs for personal use.
>
> Faced with conflicting accounts of Burgess's possession of firearms and his intent in possessing crack cocaine, the jury credited the testimony of the prosecution witnesses in almost all instances. The jury found the defendant guilty on all three counts of possession of crack with intent to distribute, on one count of possession of a firearm in furtherance of a drug trafficking crime, and on one count of possessing a firearm after having been found guilty of previous felonies. The jury did, however, acquit Burgess on the charges of possession of a firearm in furtherance of the December 18 drug crime and of being a felon in possession of a firearm during that offense. In light of Burgess's significant prior criminal history, the district judge imposed an effective prison sentence of 360 months for the five convictions.

*United States v. Burgess*, 209 Fed.Appx. 497, 498-500 (unpublished), 2006 WL 3780340 (6th Cir. December 22, 2006). Petitioner filed a timely appeal, in which he argued that the evidence was insufficient to sustain his convictions and that he was denied the effective assistance of counsel. *See id.* On December 22, 2006, the United States Court of Appeals

4

for the Sixth Circuit affirmed petitioner's convictions but remanded the case to the District Court for correction of a clerical error. *Id.* The Sixth Circuit declined to address petitioner's claim of ineffective assistance of counsel, since such allegation is properly addressed in §2255 proceedings. *See id.*, at 501-502, citing *United States v. Martinez*, 430 F.3d 317, 338 (6th cir. 2005).

On December 20, 2007, and acting without the assistance of counsel, petitioner filed the motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255. He asserts as follows:

> Burgess was denied the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution where counsel failed to:
>
> a. Pursue the suppression of Burgess's unmirandized confession in violation of the *Miranda Rule*;
>
> b. Move the trial court to suppress contraband evidence obtained against Burgess in violation of the Fourth Amendment;
>
> c. Investigate the facts of the crime charged where the officer's testimony as to his observation of Burgess would have been contradicted due to a physical impossibility.

It is the position of the respondent that petitioner's claims are without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id.* at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. To establish the second prong of the *Strickland* test, *i.e.*, prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because a petitioner must satisfy both prongs of the *Strickland* test to demonstrate the ineffective assistance of counsel, should a court determine that a petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

Petitioner in this case asserts that he was denied the effective assistance of counsel because his attorney failed to pursue a motion to suppress his May 15, 2004, statements to police as unconstitutionally obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). *Memorandum in Support of §2255*, at 4-7.

Assistant Federal Public Defender Attorney Alison Clark was initially appointed to represent petitioner, Doc. No. 6, and she filed a motion to suppress petitioner's statements to police, Doc. No. 22. A hearing on that motion was scheduled for November 18, 2004. Doc. No. 24. However, on October 27, 2004, petitioner sent a hand-written request to the Court asking for the removal of his attorney. Doc. No. 25. A hearing was held on petitioner's request, *see* Doc. Nos. 27, 28, and the Court appointed Attorney W. Joseph Edwards on November 4. 2004. *See* Doc. Nos. 28, 29. Petitioner's new trial counsel moved for a continuance of the suppression hearing and the trial date, Doc. No. 32, which the Court granted. Doc. No. 33. In the order granting that motion, the Court also set a new deadline for filing motions. *Id.* No new motion to suppress was filed, but a second motion to continue the trial date was filed by petitioner's counsel. Doc. No. 34. The Court granted that motion and continued the trial date to March 14, 2004. Doc. No. 35.

On March 14, 2004, prior to the commencement of trial, the Court discussed with petitioner and counsel the plea discussions in the case and the status of the original motion to suppress:

> DEFENDANT: Your Honor, I had called my attorney and told him on the 12th of December that I wanted that motion to suppress hearing because it was very, very important, you know what I'm saying, to my defense. And that's why I filed it in the first place.
>
> ***
>
> EDWARDS: I met with Mr. Burgess approximately a week or two before [the] scheduled hearing [on petitioner's motion to suppress statements]. We discussed trial strategy. He

7

> expressed a desire that he was going to testify. And I explained to him that, well, you know, even if we win this motion to suppress a statement, if you testify, that's something that.... the government could probably still ask you about it. And I said, this is something that you just want to be able to explain, it goes along with our trial strategy. He seemed to understand that.
>
> And as a result, I said, look, instead of going forward with the motion, let's proceed with our strategy. Even if we win the motion, the government is not going to dismiss those counts related to the May incident. I said, should I contact the Court and withdraw the motion? He agreed, yeah, let's withdraw the motion. That's why the motion was withdrawn. It wasn't just done sua sponte on my part. It was done after we discussed trial strategy and it was done after a consultation with Mr. Burgess.

*Transcript, Pretrial Proceedings,* at 7-10. The Court confirmed that the motion to suppress had been withdrawn and that there would be no further proceedings on the earlier motion. *Id.*, at 10.

Trial thereupon commenced and, following the government's case in chief, petitioner's motion for dismissal was denied. *Trial Transcript, Vol. II*, at 68. Petitioner indicated, however, that he was not prepared to proceed to his case in chief because his trial counsel "actually did nothing essentially to prepare me for trial." *Id.*, at 69. In particular, petitioner complained that a motion to suppress statements made by him to police had not been pursued. *Id.*, at 74. Petitioner's trial counsel responded:

> MR. EDWARDS: The defense of this case is difficult because we are dealing with, at least when we are talking about the 924(c) counts, two separate incidents, a December incident of '03 and a May incident of '04.

8

Now I understand the statements that he made in the May incident, the statement of: All the stuff in the truck is mine, including the drugs and gun, that's a very damaging statement. I agree with that.

However, to say that he was not going to take the stand if we had prevailed on that motion to suppress, frankly, that's not stopped by that, that's not correct because even if we prevail on that issue and even if Mr. Burns somehow thought, well, gee, I'm going to dismiss those counts, or whatever, we still have this count dealing with the December incident which under the guidelines that I have reviewed, under the guidelines that Alison reviewed, he is looking at over 20 years.

So it has been my position, after talking with Mr. Burgess, from day one that he was going to take the stand and testify, that he was going to explain –

COURT: Because Count 1 is the most important –

MR. EDWARDS: They are all damaging. But Count 1 carries the 924(c) count also. And he is looking at over 20 years because of the career offender, because of the criminal history of 6. So from the beginning of the case, he was going to take the stand and testify that… these weren't his guns; that he was a smoker of crack, not a dealer; and that as a result, he did not possess crack with an intent to distribute.

And even if we prevail on the <u>Miranda</u> issue, he was still – The government wasn't going to dismiss those counts. So he was still going to take the stand. And my position was, even if we had won the suppression issue, to have any credibility with the jury, I would still have to bring out that statement because if I didn't, I think the government would at least have very, very good grounds to use that statement even if it had been suppressed because I don't think there is any evidence of police misconduct which the Court would suppress it completely.

Again, judge, these decisions about going forward with motions, these weren't just done on my behalf. I mean it was

9

> done after talking with Mr. Burgess, after reviewing the entire file, after talking with Ms. Clark....

*Id.*, at 75-77.  The Court concluded that the trial should proceed.  *Id.*, at 80 - 81.

As discussed by the United States Court of Appeals for the Sixth Circuit, the trial transcript reflects that, consistent with the articulated defense strategy, petitioner testified at trial that he was a drug addict; he claimed ownership of the guns, the digital scale, and the drugs found in Edith Dixon's car in order to help Ms. Dixon, who was petitioner's girlfriend.  *Id.,* at 109-112.  According to petitioner, police told him that she would be sent to prison for the rest of her life based on her prior record. *Id.*, at 113.  Police interrogated him, and continued to ask whether he and Dixon were involved in selling drugs.  *Id.,* at 115.  Petitioner repeatedly denied being a drug dealer.  *Id.*, at 115-116. [1]

As this summary makes clear, the strategy of the defense – *i.e.*, that petitioner admitted possession of the drugs only to protect his girlfriend and that he was a drug addict, but not a drug dealer – required that he explain his version of the events by testifying on his own behalf at trial.  That being so, his statements could have been used against him at trial regardless of the outcome of any motion to suppress those statements. *See Michigan v. Harvey*, 494 U.S. 344, 345-346 (1990)(statements obtained from a criminal defendant in contravention of the Constitution are inadmissible in the prosecution's case

---

[1] During the government's case in chief, defense counsel had brought out on cross examination of Officer Griggs and Officer Slaughter that petitioner did not claim ownership of the incriminating items found in Dixon's car until police advised him that she would be going to jail. *Trial Transcript, Vol. I,* at 176, 216.  "[H]is concern wasn't so much for himself but ... for Edith Dixon." *Id.*, at 175.  Defense counsel had also elicited on cross examination that the firearms in Dixon's car were found underneath the seats and would not have been visible to a passenger such as petitioner. *Id.*, at 214.

10

in chief; however, such statements may nevertheless be used to impeach a defendant's false or inconsistent testimony at trial). *See also United States v. Havens*, 446 U.S. 620, 626-628 (1980); *Harris v. New York*, 401 U.S. 222, 224-25 (1971). Under these circumstances, petitioner has failed to establish either that counsel's strategic decision not to pursue the motion to suppress was constitutionally unreasonable, or that he was prejudiced by that decision. "[S]tragetic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690; *Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984).

Further, as noted by respondent, the record fails to reveal a likelihood that a motion to suppress the statements at issue would have met with success in any event. Both Officer Griggs and Officer Slaughter testified that petitioner had been advised of his rights under *Miranda* at Columbus police headquarters, but nevertheless signed a written rights waiver.[2] In his statement to police, petitioner "claimed that all of the narcotics, contraband, and the guns that were found in the vehicle were his." *Trial Transcript, Vol. I*, at 162-163, 205-206. At the time he made those statements, petitioner did not appear to be under the influence of drugs or alcohol, nor did he state that he was under the influence of drugs or alcohol. *Id*., at 163, 205-206. Petitioner's uncorroborated differing version of events would simply have pitted his credibility against that of two police officers. Again, because it is not at all clear that a motion to suppress would have been successful, petitioner's claim of ineffective

---

[2]The rights waiver signed by petitioner was admitted into evidence at trial. *See Trial Transcript*, Vol. II, at 72.

assistance of counsel for failing to file such a motion fails to warrant habeas corpus relief. See *Worthington v. United States*, 726 F.2d 1089, 1092-94(6th cir. 1984)(no ineffective assistance of counsel where record fails to reflect motion to suppress evidence would have been successful.)

Petitioner also asserts that he was denied the effective assistance of counsel because his attorney failed to move to suppress evidence obtained from him on December 18, 2003, and August 14, 2004, in violation of the Fourth Amendment. *Memorandum in Support of §2255*, at 19-29. Petitioner contends that police had no constitutionally valid basis to detain or search him or his car on December 18, 2003, and that Officer Griggs seized and searched him on August 14, 2004, based on a mere hunch in violation of *Terry v. Ohio*, 392 U.S. 1 (1968). However, upon review of the record, this Court is not persuaded by petitioner's arguments.

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison,* 477 U.S. 365, 374-375 (1986). Petitioner has failed to meet this standard here.

On December 18, 2003, police were dispatched to 2381 Apple Street on information that a black male in a dark colored truck was threatening a female with a gun. *Trial Transcript, Vol. I,* at 114-115. Upon arrival, police found a truck matching this description

and located at the address indicated by the dispatcher. Petitioner was "crouched down in the passenger's seat... so you couldn't see him.... Even with our spotlights, we did not see Mr. Burgess initially." *Id.*, at 118-119. Police ordered petitioner and LaShawn Riggins, who was seated in the driver's seat, out of the truck, handcuffed them, patted them down for weapons, and placed them in police cars. *Id.*, at 116-118. Police found a loaded firearm on the passenger's side of the truck "just on the other side of the... transmission hump." *Id.*, at 119 - 20. Police found another loaded gun under a bag on the front floor board of the truck, where petitioner's feet had been located. *Id.*, at 120, 122. Police then advised petitioner that he was under arrest and conducted a search incident to that arrest. During that search, police found an electronic scale in petitioner's inside left coat pocket, a bag of marijuana in his left front pants pocket, a bag of crack cocaine in his right pocket and two loose rocks of cocaine. *Id.*, at 123.

On August 14, 2000, while conducting surveillance for narcotics transactions at a house located at Sullivant and Clarendon where narcotics were allegedly being sold, Officer Griggs observed what appeared to be a drug transaction involving petitioner. *Id.*, at 164. From a window of a neighboring house about 50 yards away, Officer Griggs observed petitioner speak to another individual, reach into his pocket and pull out a container. *Id.*, at 164-166. Petitioner "picked something from that and gave it to the other gentleman." *Id.*, at 165. Griggs did not observe whether the other individual gave petitioner anything in return for the items from the container. *Id.*, at 165-166. However, during the search of petitioner at that time, police found a film canister containing crack

cocaine in his pocket and $900.00 in cash. *Id.*, at 167-169.

Under *Terry v. Ohio, supra*, police may conduct an investigative stop of an individual if they have a "reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Saddler*, 445 F.Supp.2d 862, 868 (S.D. Ohio 2006), citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

> If the police also have a reasonable suspicion to believe that the detainee is armed and dangerous, they may also conduct a "frisk," a limited search, to ensure the detainee has no weapons. *Terry,* 392 U.S. at 24, 88 S.Ct. 1868, *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
>
> In reviewing the legality of *Terry* stops, courts must consider the "totality of the circumstances of each case, so as to determine whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).
>
> \*\*\*
>
> A determination whether reasonable suspicion exists must give due weight to common sense judgments reached by officers in light of their experience and training. *Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (officers draw on their experience and training to make inferences from and deductions about cumulative information available to them), *United States v. Carthorn,* 35 F.3d 567, 1994 WL 487336, \*4 (6th Cir.1994) ( *per curiam* ) (finding reasonable suspicion based on Defendant's presence in the back seat of a car in a known drug area at 4:00 A.M. and due to the fact that the officer had made previous arrests at the same location), *United States v. Perkins,* 363 F.3d 317, 321 (4th Cir.2004) (noting that the officer's familiarity with the high crime and drug trafficking nature of the neighborhood were important factors in the reasonable suspicion analysis). The determination of the reasonableness of a *Terry* stop also "must embody the allowance for the fact that

> police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham v. Connor,* 490 U.S. 386, 386-87, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

*United States v. Saddler, supra,* 445 F.Supp.2d at 868-869. *See also United States v. Blair*, 524 F.3d 740, 750 (6th Cir. 2008). Although mere presence in a high crime area alone will not constitute a reasonable suspicion, that fact is "'among the relevant contextual considerations'" and "factors that appear innocent in isolation may combine to form circumstances that, as a whole, support a finding of reasonable suspicion." *United States v. Keith*, 559 F.3d 499, 504 (6th Cir. 2009), quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

As for the December 18, 2003, search and seizure of petitioner, the officers plainly had a reasonable suspicion to stop and detain the petitioner. He was found at the precise location to which they had been dispatched on a report that a man with a gun was threatening another person, hiding inside a truck that matched the description of that given by the dispatcher. *Trial Transcript, Vol. I*, at 115, 139. Petitioner was placed under arrest after police located two loaded firearms in the vehicle, one in the area of the floor where petitioner's feet had been. Police found the contraband during the search incident to that arrest. *Id.*, at 123.

Likewise, the August 14, 2000, search and seizure of petitioner was constitutionally permissible. Officer Griggs observed petitioner, whom he had arrested for possession of narcotics and firearms in May 2004, in an area where drug sales were ongoing, engaged in what appeared to be a drug transaction. Viewing the totality of the circumstances, this

15

Court is persuaded that these facts justified the police search and seizure of petitioner. *See, e.g., United States v. Paulette*, 457 F.3d 601, 605-06 (6th Cir. 2006).

In sum, petitioner has failed to establish the ineffective assistance of counsel based on his attorney's failure to file a motion to suppress evidence.

Petitioner also asserts that he was denied the effective assistance of counsel because his attorney failed to investigate the area where petitioner was arrested on August 14, 2004. According to petitioner, "it would have been impossible for Officer Griggs to see him from the location from which he claimed he observed Burgess hand an object to an unidentified person." *Memorandum in Support of §2255,* at 24.

In response to this allegation, Attorney Edwards stated:

> [A]s far as not going to the crime scene, this isn't a homicide case. There is no crime scene. On two occasions the guns and Mr. Burgess were found in a truck. So this isn't like there was a shooting over at Sullivant Gardens, and the witness's testimony about the bullet trajectory and what they perceived would be important.
>
> I have no problem going to crime scenes. I do it all the time in cases where it is warranted. But in this kind of a case there is no crime scene.
>
> So, again, I feel that every decision made in this case has been made by me along with Mr. Burgess. There has been no trickery.... There has been no misrepresentations.
>
> And frankly I think the one that I would agree with is last Thursday when he said I went to him and said there was no defense, he's right. I begged him to take the deal. I begged him that if we could get 12 or 13 or 14 years out of this, I told him this was a great result. I begged him to take it. But he chose not to.

*Trial Transcript, Vol. II,* at 77-78. Competent counsel must conduct reasonable investigations. However,

> "[T]he duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up ..." *Rompilla v. Beard,* 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). Attorneys do however, have a duty to make all reasonable efforts to learn what they can about a case. See *Id.* at 385. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilty or innocence." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005). "A purportedly strategic decision is not objectively reasonable 'when the attorney has failed to investigate his [or her] options and make a reasonable choice between them.'" *Id.* quoting *Horton v. Zant,* 941 F.2d 1449, 1462 (11 Cir. 1991). Stated differently, "[i]t is not reasonable to refuse to investigate when their investigator does not know the relevant facts the investigation will uncover." *Dickerson v. Bagley,* 453 F.3d 690, 696 (6th Cir. 2006). Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. *Wiggins v. Smith,* 539 U.S. 510, 526, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Sims v. Livesay,* 970 F.2d 1575, 1580-81 (6th Cir.1992).
>
> To demonstrate deficient performance or prejudice resulting from a failure to investigate, a petitioner must "make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchinson v. Bell,* 303 F.3d 720, 748 (6th Cir. 2002). "[T]here is no need to show that the evidence that might have been discovered would have been helpful-only that a proper judgment could not be made without the investigation when failure to investigate is thought to be sufficiently serious." *Poindexter v. Mitchell,* 454 F.3d 564, 588 (6th Cir. 2006) (Boggs, C.J., concurring).

*Gustafson v. Burt,* 2008 WL 4387344 (E.D. Michigan September 24, 2008). Petitioner has failed to meet this standard here. As noted by respondent, Officer Griggs did not specify the precise location from which he allegedly observed petitioner; it is therefore unclear

17

how defense counsel could have persuasively established that Officer Griggs could not have observed what appeared to be a drug transaction involving petitioner. *See Trial Transcript, Vol. I*, at 164-165. Further, as previously discussed, because there was not basis for suppressing the drugs found on petitioner at that time, any such attempt at impeachment would ultimately not have exonerated petitioner.

For all the foregoing reasons, this action is hereby **DISMISSED**. Petitioner's request for an evidentiary hearing is **DENIED.** His motion for notification of case status, Doc. No. 76, is **DENIED** as moot.

**The Clerk shall enter FINAL JUDGMENT.**

   /s/   Gregory L. Frost   
GREGORY L. FROST  
United States District Judge
